IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1882-03






MELVIN GOODSPEED, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SIXTH COURT OF APPEALS


BOWIE COUNTY





 Keller, P.J., delivered the opinion of the Court in which PRICE, WOMACK,
KEASLER, HERVEY and COCHRAN joined. JOHNSON, J., dissented. PRICE, J., filed
a concurring opinion in which COCHRAN, J., joined. HOLCOMB, J., filed a dissenting
opinion in which MEYERS, J., joined. 



O P I N I O N 



 We must determine whether the failure to ask any questions during voir dire and the exercise
of two peremptory challenges on jurors who had already been excused constitute performance that
is so obviously deficient that inquiry into the reasons for counsel's conduct becomes unnecessary. 
We hold that an inquiry into the reasons for counsel's conduct is still needed. Consequently, we
reverse the judgment of the court of appeals.

I. BACKGROUND


 After the State conducted its voir dire, defense counsel addressed the venire but did not ask
any questions. In his comments, defense counsel stated that he had listened to the prosecutor for
approximately two hours and that she had covered everything, including the defense side of the case. 
Although defense counsel exercised all ten of his peremptory challenges, two of those challenges
were used on prospective jurors who had previously been excused by the trial court.

 Appellant was convicted of aggravated sexual assault of a child under age fourteen and
sentenced to ninety-nine years in prison. Although a motion for new trial was filed, and an
ineffective assistance of counsel claim was raised in the motion, no complaint was made with regard
to the above-discussed conduct, and no hearing was held on the motion. 

 But on appeal a complaint was made about the conduct. The court of appeals held that this
conduct constituted deficient performance, because there was no possibility that it could have been
based on legitimate trial strategy. (1) The court explained the importance of voir dire and held that the
failure to ask questions amounted to no assistance to the defendant and that no conceivable trial
strategy would permit counsel to waive voir dire. (2) The court of appeals found the failure to ask
questions to be deficient in light of the need for fair and impartial jurors and the tendency of
questioning to elicit answers that form the basis for a challenge for cause or provide a gender or race-neutral reason for exercising a peremptory challenge. (3) 

 The court of appeals further believed that the failure to examine the panel prevented the
defense from ascertaining whether some members of the venire could not consider the full range of
punishment. (4) The court observed that appellant was eligible for community supervision, and while
the State did explain the range of punishment as being "probation up to ninety-nine years or life" and
asked the prospective jurors if they could consider the full range of punishment, the court of appeals
felt that the State did not clearly inquire into whether prospective jurors could consider probation as
a sentencing option. (5) 

 The court of appeals also found that its deficient performance holding was required by
defense counsel's use of peremptory strikes on two previously excused prospective jurors. (6) The
court of appeals characterized those strikes as "wasted" and found that they cast "extreme doubt on
whether Goodspeed's counsel was actively participating in the adversarial process to ensure a just
and fair trial." (7) 

II. ANALYSIS


 Ineffective assistance of counsel claims are evaluated under the two-part test formulated by
the Supreme Court in Strickland v. Washington, (8) requiring a showing of both deficient performance
and prejudice. (9) A Strickland claim must be "firmly founded in the record" and "the record must
affirmatively demonstrate" the meritorious nature of the claim. (10) Direct appeal is usually an
inadequate vehicle for raising such a claim because the record is generally undeveloped. (11) This is
true with regard to the question of deficient performance - in which counsel's conduct is reviewed
with great deference, without the distorting effects of hindsight (12) - where counsel's reasons for
failing to do something do not appear in the record. (13) We have said that "trial counsel should
ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." (14) 
Absent such an opportunity, an appellate court should not find deficient performance unless the
challenged conduct was "so outrageous that no competent attorney would have engaged in it." (15)

 Despite the court of appeals's characterization of counsel's conduct as "no assistance," we
cannot conclude that the failure to ask any questions in voir dire constitutes conduct so outrageous
that no competent attorney would have engaged in it. Defense counsel's articulated reason for
declining to ask questions - that the prosecution's questioning adequately covered the defense's
concerns - could be a legitimate trial strategy under the appropriate circumstances. The Supreme
Court of Montana, for example, has declined to find defense counsel ineffective for asking only one
question in voir dire where the record revealed an "extensive and thorough voir dire by the State." (16)

 The dissenting opinion relies on Armstrong v. State (17) for the proposition that defense counsel
has an obligation to ask questions during voir dire, but Armstrong held no such thing. The issue in
Armstrong was whether a prospective juror's failure to reveal that she and the prosecutor were close
friends constituted juror misconduct. (18) We held that it did not, because no one had ever asked the
panelists if they knew the prosecutor. (19) It was only in this context that we said that defense counsel
has an "obligation" to ask questions. (20) Our holding today does not conflict with precedent.

 The court of appeals opinion indicates that defense counsel's failure to ask questions was not
a valid trial strategy in this particular case because the court believed that the veniremembers were
not adequately questioned on whether they could fairly consider the issue of probation. But
appellant's trial counsel has not been afforded the opportunity to respond to this articulated concern. 
A number of valid trial strategies could prompt counsel to refrain from asking questions regarding
a prospective juror's ability to fairly assess a certain punishment, including probation. In the capital
murder context, in which a jury is called upon to choose between life and death, and where a juror's
ability to fairly consider the entire range of punishment is at least as important as it is here, several
courts have stated that the failure to ask "life-qualifying" questions (whether a prospective juror can
fairly consider a life sentence) does not necessarily constitute deficient performance. (21) According
to the Sixth Circuit, counsel may have validly refrained from asking such questions because he did
not want prospective jurors to hear each other's answers, because he was afraid death-leaning jurors
might influence other jurors, because he was satisfied with the composition of the jury and its ability
to honestly and ably perform its duties, or because he did not want to aid the prosecution in deciding
how to exercise its own peremptory challenges. (22) The Supreme Court of Tennessee has suggested
that defense counsel could validly refrain from asking such questions on the ground that the focus
of the defense was on guilt and "[t]oo intense an inquiry" regarding punishment "may be perceived
by potential jurors as a concession that credible evidence of guilt exists." (23)

 All of these reasons are potentially applicable in a case such as this one. Counsel might have
been afraid that more punishment-oriented jurors could influence others jurors; he may have been
satisfied with the composition of the panel; he may have refrained from asking questions about
probation to avoid giving the State more information on which to exercise peremptory challenges;
he may have believed that such questioning would be perceived as admitting there was credible
evidence of guilt; or he may have had any combination of these reasons. Counsel might also have
believed that the facts of this aggravated assault of a child case were so severe that there was little
or no possibility of appellant receiving probation upon conviction. These proposed reasons are
speculative, but as discussed above, that is the problem with trying to evaluate an ineffective
assistance claim in which defense counsel has not been given an opportunity to respond, and why
such claims are usually rejected.

 Finally, the court of appeals contends that counsel's deficient performance is revealed by his
use of two peremptory challenges on jurors who had already been excused. Again, counsel has not
been afforded the opportunity to respond. (24) But even if the strikes constitute deficient performance,
appellant must show that they harmed him. This he has not done.

 The judgment of the court of appeals is reversed, and the case is remanded for further
proceedings consistent with this opinion. 

 KELLER, Presiding Judge

Date delivered: April 6, 2005

Publish
1. Goodspeed v. State, 120 S.W.3d 408 (Tex. App.-Texarkana 2004).
2. Id. at 410-411.
3. Id. at 411.
4. Id. at 411-412.
5. Id. at 412.
6. Id.
7. Id.
8. 466 U.S. 668 (1984).
9. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).
10. Id. at 813.
11. Id. at 813-814
12. Id. at 813.
13. Id. at 814.
14. Rylander v. State, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).
15. Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), cert. denied, 537 U.S.
1195 (2003).
16. State v. Kolberg, 241 Mont. 105, 108, 785 P.2d 702, 704 (1990). 
17. 897 S.W.2d 361 (Tex. Crim. App. 1995).
18. Id. at 363-364.
19. Id. at 364.
20. Id. at 363-364.
21. Stanford v. Parker, 266 F.3d 442, 453-454 (6th Cir. 2001), cert. denied, 537 U.S. 831
(2002); Commonwealth v. Morris, 546 Pa. 296, 307-309, 684 A.2d 1037, 1042-1043 (1996),
cert. denied, 521 U.S. 1106 (1997); Harman v. State, 896 S.W.2d 94, 105 (Tenn. 1995).
22. Stanford, 266 F.3d at 454.
23. Hartman, 896 S.W.2d at 105.
24. See People v. Lewis, 50 Cal. 3d 262, 290, 786 P.2d 892, 851 (1990)(defense counsel
not automatically ineffective for failing to exercise all of his allotted peremptory challenges).