No. 99-369

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 211

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JESSE WILLIAM FEY,

Defendant and Appellant.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Toole,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James A. Johnson, Attorney at Law, Shelby, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Cregg W. Coughlin,

Assistant Attorney General, Helena, Montana

Merle Raph, Toole County Attorney, Shelby, Montana

Submitted on Briefs: March 9, 2000

Decided: August 8, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Defendant and Appellant Jesse Fey (hereafter, Fey) appeals the Order of the Ninth Judicial District Court, Toole County, denying his motion for entry of a judgment notwithstanding the verdict on the charge of Conspiracy to Obstruct Justice.

¶2 We affirm.

¶3 The following issue is presented on appeal:

¶4 Whether the District Court erred in concluding that there was sufficient corroborating evidence in support of testimony that Appellant conspired to obstruct justice.

## Standard of Review

¶5 We review a district court's denial of a motion for judgment notwithstanding the verdict for whether "the evidence, viewed in a light most favorable to the nonmoving party, tends to establish the case alleged in the party's pleading." Hauck v. Seright, 1998 MT 198, ¶ 45, 290 Mont. 309, ¶ 45, 964 P.2d 749, ¶ 45. The sufficiency of evidence to corroborate the testimony of an accomplice is a question of law. *See* State v. Ungaretti (1989), 239 Mont. 314, 317-18, 779 P.2d 923, 925.

## Factual and Procedural Background

¶6 On the evening of June 22, 1998 Fey, his mother, Mary Christaens (Christaens), a co-worker of Fey, Brian Russell (Russell), and a friend, Aaron Omsberg (Omsberg), watched professional wrestling on a television in Fey's trailer. They drank beer. Desirae Moss and her sister, Jolie Moss, came to Fey's trailer that evening. Later, everyone went in Christaens' car for a drive. They brought beer and whiskey with them. Fey drove. Fey lost

control of the car on a gravel road. The car rolled repeatedly. Jolie and Desirae Moss and Christaens were thrown out of the car. Jolie Moss died at the scene of the accident. Desirae Moss and Christaens were both seriously injured.

¶7 After the accident, Fey climbed out of the car and determined that Jolie Moss was dead. He checked on the other car passengers and left the accident scene to get help. Fey testified at his trial that before he left the accident scene to get help, he grabbed three beers that he found outside the wrecked car, as he "was thirsty." Fey went to a house and summoned emergency assistance. He returned to the accident scene.

¶8 Russell testified that before Fey left the accident scene, Fey told him to get rid of the alcohol. Russell testified that he gathered up the beer and a whiskey bottle and left them in a field.

¶9 Police conducted an horizontal gaze nystagmus test of Fey; Fey scored a six out of a possible six points, indicating that his blood alcohol content exceeded 0.10. Police officers smelled alcohol but found no alcoholic beverages or containers in Christaens' car. Fey was taken by ambulance to a hospital. Fey agreed to give a blood sample but claimed that he drank three beers after the crash. His blood alcohol content was determined to be 0.16.

¶10 Police interviewed Fey several days after the accident. Fey asserted that the car struck something on the road, that a defect in the steering column of the car led him to overcorrect, and that he lost control of the car. At trial, Fey testified that he did not think that "alcohol was the major part of the accident. I believe it was just bad luck, wrong time to be on the road."

¶11 The day after the crash, Toole County Coroner Dan Whitted (Whitted) drove to the scene of the accident. Whitted looked north from the road and saw something shine in a field. He went to investigate and discovered a Bud Light beer box, cans of Bud Light beer, some of them full and some of them empty, and a bottle of Jack Daniels whiskey. Whitted reported his discovery to police. Montana Highway Patrol Officer Jim Vollrath then went to the scene of the accident. About one to two hundred feet from the crash site, Vollrath found Bud Light beer cans thrown in a shotgun pattern in the field, a Bud Light beer box, and a quarter-full bottle of Jack Daniels whiskey.

¶12 Fey testified that he returned to the accident scene several days after the crash. He testified further that he "saw something out there [in the field north of the accident site]

and it looked interesting" and that he went about one hundred yards into the field to investigate the object. Fey denied, however, that he was looking for "stashed" beer and he denied knowing that Russell had spoken with police the previous day. Fey testified that he did not remember telling Russell to dispose of the beer; he stated that he did not believe he had such a conversation with Russell because he "was more concerned about the injuries there."

¶13 In January, 1999 the State filed an amended information, charging Fey with Count one, negligent homicide, a felony; Counts two through four, negligent vehicular assault (committed upon Desirae Moss, Mary Christaens, and Aaron Omsberg, respectively), a felony; Count five, conspiracy to obstruct justice, a felony; Count six, driving under the influence of alcohol, a misdemeanor; and Count seven, unlawful transactions with children, also a misdemeanor. In February, 1999 Fey was tried by jury. While instructing the jury, the District Court gave jury instruction number 29:

> Testimony has been presented that the witness BRIAN RUSSELL may be an accomplice in this case. In this respect, you are to be guided by the following rules of law:
>
> 1. An accomplice is someone who knowingly and voluntarily, with common intent with the principal offender, unites in the commission of a crime.
>
> 2. It is a question of fact for the jury to determine from the evidence and from the law as given you by me whether or not in this particular case the witness BRIAN RUSSELL was or was not an accomplice within the meaning of the law.
>
> 3. The testimony of an accomplice ought to be viewed with distrust.
>
> 4. A conviction cannot be had on the testimony of an accomplice unless it is corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

¶14 The jury found Fey guilty on all counts. In February, 1999 Fey moved the District Court to enter a Judgment Notwithstanding the Verdict and Brief and to find Fey not guilty of the charge of conspiracy to obstruct justice. The District Court denied Fey's

motion. The District Court sentenced Fey to ten years prison on Count one, with four years suspended, and to five years prison on each of Counts two through four, with three years suspended for each count and the sentences to run concurrently and consecutive to Count one. The District Court also sentenced Fey to a suspended sentence of ten years prison on Count five; to sixty days jail on Count six; and to a suspended sentence of six months jail on Count seven. From the District Court's Order, Fey appeals.

## Discussion

¶15 Whether the District Court erred in concluding that there was sufficient corroborating evidence in support of testimony that Appellant conspired to obstruct justice.

¶16 Fey does not argue that even assuming *arguendo* that Russell's testimony had sufficient corroboration, there was insufficient evidence to establish the elements of the crime of conspiracy to obstruct justice. We therefore focus on the issue whether there was sufficient corroborating evidence in support of Russell's testimony.

¶17 Fey argues that Russell's testimony about his removal of alcohol from Christaens' car requires corroboration pursuant to § 46-16-213, MCA. Fey argues further that at trial, the State offered insufficient evidence to corroborate Russell's testimony. Fey argues that even when viewed in a light most favorable to the State, his return to the scene of the accident and his "looking around in a plowed field, adjacent to a field of growing grain in which the alcohol had been hidden . . . is nothing more than suspicious, even assuming that Fey was informed by Russell that he, Russell, had told law enforcement where the alcohol was hidden and that he, Russell, had incriminated Fey." Further, Fey argues that "[c]onsidering all of the potential evidence against him already, it is improbable that Fey would have concluded that anything could or would be gained by returning to the scene of the accident in an attempt to locate and dispose of the 'stashed' beer."

¶18 The State responds that when viewed in a light most favorable to the State, the evidence presented at trial was sufficient to corroborate the testimony of Russell. The State contends that trial testimony established most importantly that Fey returned to the scene of the crash the day *after* Russell was interviewed by police. The State asserts that a "reasonable inference was that Fey had become aware that Russell talked to law enforcement the day before, and he went to the scene to collect the booze and dispose of it permanently."

¶19 Section 46-16-213, MCA, provides:

> **Testimony of person legally accountable**. A person may not be found guilty of an offense on the testimony of one responsible or legally accountable for the same offense, as defined in 45-2-301, unless the testimony is corroborated by other evidence that in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense.

¶20 We have previously addressed the guidelines for testing the sufficiency of corroborating evidence. In State v. Kemp (1979), 182 Mont. 383, 597 P.2d 96, we concluded:

> To be sufficient, corroborating evidence must show more than that a crime was in fact committed or the circumstances of its commission. It must raise more than a suspicion of the defendant's involvement in, or opportunity to commit, the crime charged. But corroborative evidence need not be sufficient, by itself, to support a defendant's conviction or even to make out a *prima facie* case against him. Corroborating evidence may be circumstantial, and can come from the defendant or his witnesses.

*Kemp, 182 Mont. at 387, 597 P.2d at 99 (citations omitted). In State v. Kaczmarek (1990), 243 Mont. 456, 460, 795 P.2d 439, 442 (emphasis added) (citation omitted), we further determined that "corroborating evidence is not insufficient merely because it is circumstantial, disputed, or possibly consistent with innocent conduct; it is the jury's duty to resolve such factual questions."*

¶21 In the present case, when viewed in the light most favorable to the State, we conclude that there was sufficient corroborating evidence for Russell's testimony that he removed alcohol from the wrecked car on the instruction of Fey. A jury could reasonably infer from Fey's having walked into a field to investigate an object "which caught his eye as it reflected light from the sun," that Fey was looking for the alcohol containers that Russell had removed from the car the night of the crash. Fey argues that he did not know that Russell had spoken with police the day before he visited the field; however, the jury was free to determine his credibility on that matter. *See, e.g.,* State v. Clay, 1998 MT 244, ¶ 32, 291 Mont. 147, ¶ 32, 967 P.2d 370, ¶ 32 (citation omitted) (concluding " '[i]t is within the province of the finder of fact to weigh the evidence presented and determine the credibility of witnesses' "). This evidence clearly "tend[ed] to connect the defendant with the commission of the offense." Section 46-16-213, MCA.

¶22 We hold that the District Court did not err in concluding that there was sufficient corroborating evidence in support of Russell's testimony.

¶23 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON